IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, :<br>:<br>: **CIVIL ACTION**<br>Plaintiff, :<br>:<br>v. :<br>:<br>RALPH ANGELLILLI, ET AL., : No. 11-3425<br>:<br>Defendants. :<br>: | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                           **January 29, 2013**

This case presents the question as to whether defense and indemnification insurance coverage should be provided for a funeral director who has been convicted of crimes involving the unlawful taking and sale of body parts.

Plaintiff, State Automobile Mutual Insurance Company, has filed this declaratory judgment action, arguing that it is not required to provide coverage to its insureds, Gerald Garzone and the Garzone Funeral Home ("Garzone Defendants"), regarding lawsuits filed against them in the Court of Common Pleas of Philadelphia County.[1] The underlying claims pertain to alleged damages suffered by family members of decedents in the Garzone Defendants' care in connection with an organ and tissue harvesting scheme. As a result of this scheme, on September 2, 2008, Garzone pled guilty to multiple criminal violations including criminal conspiracy, 244 counts of theft by unlawful taking and abuse of a corpse, among others.

---

[1] In addition to the Garzone Defendants, all other parties to the underlying action have been named as Defendants in the present action for declaratory relief.

Currently before this Court is Plaintiff's motion for summary judgment. Because we conclude that the complaints filed in the Court of Common Pleas of Philadelphia County do not allege an "occurrence" which took place during the period of State Auto's insurance policy and because none of the alleged damages meet the definitions of "bodily injury" or "property damage," Plaintiff's motion for summary judgment is granted and declaratory judgment will be entered in favor of the Plaintiff.

I.    **FACTUAL AND PROCEDURAL HISTORY**[2]

Gerald Garzone was a licenced funeral home director and co-owner of Liberty Crematorium in Philadelphia, Pennsylvania. (Doc. No. 62, Ex. 2.) As alleged in the underlying complaints, beginning in 2004, Garzone and Liberty's other co-owners agreed to provide corpses to Michael Mastromarino, the president of Biomedical Tissue Services, so that he could remove and sell the corpses' organs and tissues without the consent of the deceased or their families. (Id.) These organs and tissues were removed without regard to proper safety protocols and any records or samples were falsified in order to sell the organs and tissues to hospitals worldwide. (Id.) Over the course of this scheme, approximately 244 bodies were used in exchange for nearly $250,000. (Id.)

On September 2, 2008, Garzone pled guilty in the Court of Common Pleas of Philadelphia County, Criminal Division, to multiple criminal charges arising out of this scheme, including corrupt organizations, criminal conspiracy, 244 counts of theft by unlawful taking, abuse of corpse, and fraudulently obtaining food stamps or other public assistance. (See Doc. No. 62, Ex. 23.) Garzone was sentenced to eight to twenty years in prison. (Doc. No. 62, Ex. 2.)

---

[2] The following facts are undisputed, unless stated otherwise.

In addition to the criminal charges brought against Garzone and his co-conspirators, a civil action was also filed against Garzone and the Garzone Funeral Home in the Philadelphia County Court of Common Pleas, Civil Division, by families of the decedents whose tissues and organs were illegally harvested.  (See Underlying Complaints, Doc. No. 62, Exs. 2-22.)  The families seek compensation for injuries suffered when they learned that the bodies of their deceased loved ones had been desecrated. (Id.)  They allege they suffered "severe pain, suffering, severe emotional distress, mental anguish and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages." (See, e.g., Doc. No. 62, Ex. 2, ¶ 39.)  These damages are alleged to be the result of the intentional, or alternatively, the negligent actions of Garzone and the Garzone Funeral Home. (Id. at ¶¶ 41-42.)

State Automobile Mutual Insurance Company ("State Auto") has filed this action seeking a declaratory judgment that they have no duty to defend or indemnify the Garzone Defendants and thus are not liable for compensating the family members in the underlying complaints.

## II.  SUMMARY JUDGMENT STANDARD

A party moving for summary judgment must show that there are no genuine issues of material fact and that judgment is appropriate as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

The non-moving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present evidence from which a jury could reasonably find in its favor by citing to the record. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c). On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256.

## III. LEGAL ANALYSIS[3]

### A. State Auto's Insurance Policy

The insurance policy at issue was in effect from December 15, 2004 to December 15, 2005. (See State Auto Policy, Doc. No. 62, Ex. 1.) Pertinent to our review are the portions of the policy titled "Businessowners Liability Coverage Form" ("BLC") and the "Funeral Director's Professional Liability Endorsement" ("FDPL").[4]

The BLC provides that State Auto "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' [or] 'property damage' . . . to which th[is] insurance applies." (BLC at 1.) It also states that the insurance only applies if: "(a) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (b) The 'bodily injury' or 'property damage' occurs during the policy period." (Id.) For purposes of the BLC, bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time[,]" and property

---

[3] When a federal district court presides over a case grounded in diversity jurisdiction, the court applies the choice-of-law rules of its forum state. Klaxon v. Stentor Elec. Mfg., 313 U.S. 487 (1941); LeJeune v. Bliss–Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Both parties agree that Pennsylvania law governs and accordingly this Court will apply Pennsylvania law.

[4] The State Auto policy is attached to Plaintiff's Motion for Summary Judgment as Exhibit 1. While there is not consistent numbering within the exhibit as a whole, each portion of the policy (i.e., the BLC and FDPL) contains its own numbering. All citations to the policy will be made to those internal numberings—for example, BLC at 1.

damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Id. at 11, 14.) The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 13.)

The FDPL, which acts to amend the BCL, dictates that State Auto will "pay those sums the insured becomes legally obligated to pay as damages resulting from the insured's negligent act, error or omission as a funeral director." (FDPL at 1.) The FDPL limits coverage to "damages that occur during the policy period and within the 'coverage territory.'" (Id.) The FDPL extends coverage for property damage to "dead bodies, any casket, urn or other container for a dead body or its cremated remains or the personal effects of a deceased person while in the care, custody or control of the insured, unless such 'property damage' is caused by theft or hostile fire." (Id.) (emphasis added).

Thus, based on the above provisions, for the State Auto policy to be triggered, the amounts sought must be compensation for bodily injury or property damage due to an occurrence which took place between December 15, 2004 and December 15, 2005 or for property damage sustained to a dead body, casket or urn that was not caused by theft or hostile fire between December 15, 2004 and December 15, 2005.

### B. The Injuries Alleged Were Not Caused by an Occurrence that Took Place Within the Policy Period.

In support of their motion for summary judgment, State Auto contends that because the families of the deceased only learned of the scheme after the expiration of the policy, the damages sought for bodily injury were not a result of an "occurrence" which took place within the policy period. (Pl.'s Mot. Summ. J., pp. 25-31.)

While the parties agree that none of the families were made aware of the scheme prior to the expiration of the policy on December 15, 2005, they disagree on which test should be applied to determine when the "occurrence" potentially covered by the policy took place. Plaintiff argues that the "effects test" is applicable. Under this test, an "occurrence" takes place when the injury first becomes reasonably apparent. Here, the families suffered emotional distress, mental anguish and harm upon learning that their loved ones' bodies had been desecrated. Because these injuries could not occur unless and until they were made aware of the scheme, which did not happen until after the policy expired, Plaintiff asserts that summary judgment is appropriate.

Conversely, Defendants claim that the proper test is the "cause test," under which an occurrence is determined by looking at the cause or causes of the resulting injury. According to Defendants, because the injuries sustained were the result of conduct which occurred during the policy period, State Auto's policy would be triggered and summary judgment is not appropriate.

Under Pennsylvania law, "[i]n order to ascertain whether there was an occurrence within the policy period we must identify the occurrence and then determine when it took place." Appalachian Ins. Co. v. Liberty Mutual Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982). The number of "occurrence[s] is determined by the cause or causes of the resulting injury." Id. The parties do not dispute that a single "occurrence" is at issue: the Garzone Defendants' conduct during the organ and tissue harvesting scheme. Defendants argue our inquiry should end here. However, we must next determine when the "occurrence" took place.

In Pennsylvania, to determine when an occurrence takes place, courts apply an "effects test" and look to the result of the occurrence, or "the time when the accident or injurious exposure produces personal injury." Id. at 62 (quoting Eagle-Picher Indus., Inc. v. Liberty Mutual Ins. Co., 523 F. Supp. 110, 114 (D. Mass. 1981)); see also Fed. Ins. Co. v. Dentsply Int'l

6

Inc., 2007 WL 4150664, at *3 (M.D. Pa. Nov. 19, 2007) (holding that determining when the occurrence took place is made "by reference to the time when the injurious effects of the occurrence took place"); D'Auria v. Zurich Ins. Co., 507 A.2d 857, 862 (Pa. Super. 1986) (finding that "an 'occurrence' happens when *injury* is reasonably apparent, *not* at the time the *cause* of the injury occurs") (emphasis in original).[5]

Applying the "effects test" to the case at bar, it is undisputed that the injuries alleged by the Defendants occurred well outside of the policy period.[6] The families are seeking compensation for severe pain and suffering, and other damages they sustained after they learned about the Garzone Defendants' illegal body parts scheme. As none of the families knew about the scheme until after the policy expired, the identified injuries arose outside of the policy period, and as such, there was not an "occurrence" within the policy period. Consequently, Plaintiff has no duty to provide a defense or indemnification coverage and summary judgment is appropriate.

### C. The Injuries Alleged Do Not Qualify as Bodily Injury or Property Damage as Defined by the Insurance Policy and Pennsylvania Law.

Even assuming the alleged injuries arose within the coverage period, Plaintiff urges that coverage would still be barred because the injuries alleged in the underlying complaints do not

---

[5] This "effects test" is in-line with the reasonable expectations of both the insurer and the insured. See Appalachian Ins. Co., 676 F.2d at 62. A policy holder could "reasonably expect[ ] to be indemnified for injuries occurring during the policy period." Id. Similarly, an insurance provider would not expect to be liable for injuries that could occur many years after a policy has lapsed.

[6] In the state court actions, each of the family-member Plaintiffs allege that they suffered serious emotional injury when they learned of the tissue and organ theft scheme from the authorities. According to the underlying complaints, all family members learned of the scheme after December 15, 2005, when the State Auto policy expired. (See Underlying Complaints, Doc. No. 62, Exs. 2-22.)

7

qualify as bodily injury. Defendants respond that "severe pain and suffering" is broad enough to qualify as bodily injury. On this issue, we also agree with Plaintiff.

"Pennsylvania courts have soundly rejected the contention that policy definitions of injury or bodily injury encompass mental or emotional harm." Nationwide Mut. Ins. Co. v. Garzone, 2009 WL 2996468, at *15 (E.D. Pa. Sept. 17, 2009) (quoting Babalola v. Donegal Grp., Inc., 2008 WL 4006721, at *3 (M.D. Pa. Aug. 26, 2008)). Similarly, complaints alleging physical manifestations of mental or emotional harm "likewise fail[ ] to trigger coverage under a policy insuring against claims brought for 'bodily injury.'" Id. (citing Babalola, 2008 WL 4006721, at *3). Notably, in Nationwide Mutual Insurance Company v. Garzone, 2009 WL 2996468 (E.D. Pa. Sept. 17, 2009), a case almost identical to the one before us,[7] family members of the deceased sought to recover the damages for pain and suffering, mental anguish and other economic losses, just like the family members in the present case. We agree with the Nationwide court, and also find that "severe pain and suffering, severe emotional distress[,] mental anguish and harm" and economic losses associated with these emotional injuries that were caused when the family members learned of the organ theft scheme do not qualify as "bodily injury" as defined by the policy and Pennsylvania law. Id. at *15-17.

Additionally, in their response to Plaintiff's motion, the family members also appear to allege "property damage" to the corpses of their loved ones. As a preliminary matter, "it is by no means settled under Pennsylvania law that a deceased body is the 'property' of the family, nor is it settled that harvesting the organs of the deceased is 'damage' to that 'property.'" Nationwide,

---

[7] Nationwide, which was brought in this district, involved the same conspiracy at issue in this case. In Nationwide, the insurance company similarly sought a declaratory judgment that it had no duty to defend or indemnify Garzone when family members of decedents brought suit for their injuries resulting from the organ theft scheme. The only difference between the present case and Nationwide is that Plaintiffs are different insurance companies, bound by different policies.

2009 WL 2996468, at *15 (citing Whitson v. City of Philadelphia, 2008 WL 4739532, at *5-6 (E.D. Pa. Oct. 27, 2008)).[8] Regardless of whether the bodies of the decedents are Defendants' property, the underlying complaints fail to identify any specific property damage and do not seek any compensation for property loss. Instead, the families seek compensation generally for "severe pain and suffering, severe emotional distress and mental anguish and harm . . . [and] present and future lost wages." (See, e.g., Doc. No. 62, Ex. 2, ¶ 39.) These are injuries the families suffered when they learned of the organ harvesting scheme, not property damage.

Moreover, even if the family members do have a pecuniary property interest in the deceased bodies, the FDPL contains an applicable exclusion concerning property damage. The FDPL excludes coverage for property damage "caused by theft or hostile fire." (FDPL at 1.) Here, because any damage to the corpses arose out of the theft of the decedent's bodies and/or organs, the exclusion is applicable.

Therefore, summary judgment would also be appropriate on the grounds that the injuries alleged by Plaintiffs do not fit the definitions of bodily injury or property damage under the applicable insurance policies.[9]

---

[8] When courts have found that family members have "quasi-property" rights, these rights are not pecuniary in nature, but rather arise out of their duty to bury the dead. See Whitson, 2008 WL 4739532, at *5. Even the single case cited by the family members for the proposition that they have a property interest in the decedents' bodies found that any property interest in a corpse is "subject to a trust and limited in its rights to such exercise as shall be in conformity with the duty out of which the rights arise." Datz v. Dougherty, 41 Pa. D. & C. 505, 506 (Pa. Ct. Com. Pl. 1941).

[9] Plaintiff also asserts that it is not responsible for defense or indemnification coverage because the policy excludes coverage for "expected or intended" harm. In order for the "expected or intended injury" exclusion to apply, the insured must have "desired to cause the consequences of his act" or "acted knowing that the consequences were substantially certain to result." United Serv. Auto. Ass'n v. Elitzky, 517 A.2d 982, 986 (Pa. Super. 1986). To the extent that the underlying complaints directly refer to actions taken by Garzone during the organ and tissue harvesting scheme to which he pled guilty, we find that intent has been established. However, the underlying complaints also allege negligent infliction of emotional distress, negligent

## IV.    CONCLUSION

Because we find that the underlying complaints do not allege an "occurrence" which took place during the period of the State Auto insurance policy, and because none of the alleged injuries qualify as "bodily injury" or "property damage," Plaintiff is not obligated to defend or indemnify Defendants.  Thus, Plaintiff's motion for summary judgment is granted and declaratory judgment will be entered in favor of the Plaintiff.

Our Order follows.

---

misrepresentation and negligence for failing to obtain proper and adequate consent from families of decedents.

Because it is unclear that these allegations of negligence were considered during Garzone's guilty plea, we cannot find that intent has been conclusively established.  See Nationwide Mut. Ins. Co. v. Garzone, 2009 WL 2996468, at *12 (Sept. 17, 2009) (finding that allegations of negligence should not be set aside due to the criminal convictions); Erie Ins. Exch. Co. v. Muff, 851 A.2d 919, 930 (Pa. Super. 2004) (finding that although babysitter was convicted of first degree murder, the conviction does not conclusively establish her intent regarding certain allegations of negligent conduct in the underlying complaints).

For the same reason, we disagree with Plaintiff's assertion that coverage is prohibited by the public policy of Pennsylvania.  Although there is a recognized public policy that insurers are not required to defend the criminal actions of their insureds, the allegations of negligence are not criminal.